OAO91 (Rev. 12/03)  Criminal Complaint

# UNITED STATES DISTRICT COURT

EASTERN    DISTRICT OF    MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br>V.<br>LUIS TORRES | CRIMINAL COMPLAINT<br><br>Case Number: _07 · MJ- 107 - LTS_ |

(Name and Address of Defendant)

I, the undersigned complainant state that the following is true and correct to the best of my

knowledge and belief. On or about ___Oct. 6 and 12, 2006___ in _____Bristol_____ County, in
(Date)

the _____Eastern_____ District of _____Massachusetts_____ defendant(x) did,

(Track Statutory Language of Offense)
knowingly transfer a false identification document knowing that such document was produced without lawful
authority,

in violation of Title _____18_____ United States Code, Section(x) _____1028(a)(2)_____ .

I further state that I am a(x) _____Special Agent, ICE_____ and that this complaint is based on the
Official Title

following facts:

See attached Affidavit of ICE Special Agent Thomas L. Ohlson

Continued on the attached sheet and made a part of this complaint:   ☒ Yes   ☐ No

_Thomas R. Ohl_
Signature of Complainant

_Thomas L. Ohlson_
Printed Name of Complainant

Sworn to before me and signed in my presence,

___3/2/2007___                                               at    Boston
Date                                                                City

___Leo T. Sorokin___        ___U.S. Magistrate Judge___
Name of Judge                        Title of Judge

Signature of Judge

*07 - MJ 107-LTS*

## AFFIDAVIT

I, Thomas L. Ohlson, having been duly sworn, hereby depose and state:

1.  I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE), and have been so employed since April, 1999.  Among other duties, I am assigned to investigate the manufacture and sale of fraudulent Resident Alien cards, Form I-551 (hereinafter "green cards"), and fraudulent Social Security Account Number cards, ("social security cards").  From my training, I know that persons, usually aliens, manufacture and distribute counterfeit green cards, social security cards and other false documentation. The counterfeit documents are then sold to aliens who are illegally in the United States or who do not have permission to work in the United States.  The combination of a counterfeit green card and a counterfeit social security card in the same name is commonly referred to as a "set."  The counterfeit documents are then sold to aliens who are illegally in the United States or who do not have permission to work in the United States.

2.  Based on my training and experience, I am aware that Title 18, United States Code, Section 1028(a)(2) makes it an offense to knowingly transfer an identification document, authentication feature, or a false identification document knowing that such document or feature was stolen or produced

without lawful authority.  Having so stated, I make this
affidavit in support of a criminal complaint charging an
individual named Luis Torres ("TORRES") with knowingly
transferring sets of fraudulent identification documents on
October 6 and 12, 2006, in violation of 18 U.S.C. § 1028(a)(2).

3.    The statements in this affidavit are based on my
personal knowledge, information provided to me by other law
enforcement officers and agents of this service, as well as
information provided to me by a cooperating witness (hereafter
referred to as "CW") and two undercover agents (hereafter
referred to as "UCA-1" and "UCA-2").  This affidavit is not
intended to set forth all of the information that I and other law
enforcement personnel have learned during this investigation, but
rather consists of that information necessary to support a
finding of probable cause to believe that Luis Torres has
violated 18 U.S.C. § 1028(a)(2).

Background of the Investigation

4.    As of July, 2006, and at all relevant times, TORRES
worked at a music store called Aries Record Shop, located at 971
Brock Avenue, in New Bedford, Massachusetts.  On July 27, 2006, a
New Bedford police officer stopped a man named Josue Martinez
(Martinez) and recovered from him a fraudulent green card and
social security card.  Martinez told the police officer that he
had purchased the documents from TORRES earlier that day near

2

Aries Record Shop, for $100.00.  When a New Bedford police officer subsequently interviewed TORRES later that day, TORRES produced the $100.00 that Martinez had paid him for the counterfeit documents, and explained that he had charged Martinez $30.00 for the green card, $50.00 for the social security card. Although it is unclear whether TORRES owns, or merely works at Aries Record Shop, TORRES explained that the store had retained the remaining $20.00.  A subsequent inquiry revealed that both cards were counterfeit.  The green card, produced in the name of Josue MARTINEZ, A057 890 266, bore a valid number but the number was issued to another individual.  The Social Security Administration also confirmed that the social security card number, 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, in name of Wilber Angel, was invalid.

    5.    Although ICE had no information regarding TORRES' background, Rhode Island motor vehicle registry records reveal that he obtained an Identification Card on February 5, 2003, listing a birth year of 1961, and listing an address of 539 Kenyon Ave, Providence, RI, which we learned does not exist. Massachusetts Registry of Motor Vehicles records also list a Luis TORRES born in 1961, but list 971 Brock Avenue, New Bedford, Massachusetts, the location of Aries Record Shop, as his address. FBI records also exist for a Luis Torres born in 1961; they reveal that TORRES was born in Mexico and, in July of 2004, pled guilty in state court in New York to a charge of possession of a

3

forged instrument.

6.    On September 7, 2006, the CW and UCA-1 entered the Aries Record Shop and told TORRES that they needed to obtain a green card and social security card.  UCA-1 gave TORRES passport-type photographs of herself and a copy of her signature exemplar. On the following day, September 8th, the CW went to Aries Record Shop on UCA-1's behalf and TORRES produced for the CW a counterfeit alien registration card that bore the passport-type photograph of UCA-1, with the registration number A066 470 896. TORRES also gave the CW a social security card bearing the name Yolanda Ramos and the social security number 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.  Both cards also bore a forged signature of UCA-1's undercover name of Yolanda Ramos.  The CW paid TORRES $120.00 for the documents. ICE and SSA officials subsequently confirmed that both documents were counterfeit and that the numbers used for both cards were invalid.

The Investigation

7.    Based on the foregoing, we initiated a more expansive investigation in which we used another undercover agent (UCA-2) to make additional controlled buys of fraudulent green cards and social security cards from TORRES.  Summarized below, TORRES sold UCA-2 six completed sets of fraudulent identification documents for a total of $720.00, including one set of documents on October 6, 2006, at Aries Record Shop at 971 Brock Avenue, New Bedford,

4

Massachusetts, and five sets of documents on October 12, 2006, in a stairwell in the New Bedford building where TORRES is believed to reside, at 500 South Second Street.

The First Controlled Purchase on October 6, 2006

8.   On October 04, 2006, and at our direction, a CW contacted TORRES by telephone and, in the course of two non-recorded and non-monitored conversations, told TORRES that an individual (UCA-2) would be coming to the store the following day to meet with TORRES to discuss the purchase of fraudulent documents.  The CW told TORRES that it knew UCA-2 and that UCA-2 could use the CW's name as a means of introduction to TORRES. TORRES told the CW UCA-2 needed to be at the store between 9:00 a.m. and 9:15 a.m.

9.   On October 5, 2006, and prior to the planned meeting with TORRES, ICE agents met with UCA-2 and provided UCA-2 with two photographs of the same individual to be presented to TORRES for the manufacture of one set of fraudulent documents, i.e., one green card and one social security card.  UCA-2 was instructed to place a name and date of birth on the reverse of one of the photographs, and was given $120.00 to pay TORRES for the cost of the set of fraudulent documents.  In addition, UCA-2 was fitted with electronic monitoring and recording equipment and was shown a picture of TORRES for identification purposes.

10.   I and other ICE agents then established surveillance

not far from Aries Record Shop, at approximately 8:30 AM.

Shortly before 9:00 a.m., TORRES, driving a gray Chevrolet Lumina

with Massachusetts registration number 46AJ61 (registered to

Carmelo M. LOPEZ Jr. of 126 Tallman Street, New Bedford, MA)

arrived, parked in front of the store, and then entered Aries

Record Shop.

11.   UCA-2, who had previously parked its vehicle in an

adjacent lot on Brock Avenue, entered the store just after 9:00

a.m.  UCA-2 recognized TORRRES from the photograph we had

provided.  UCA-2 approached TORRES and told him that UCA-2 was

there to meet with "Luis".  Initially, TORRES told UCA-2 that he

was not "Luis," but he eventually admitted that he was Luis after

UCA-2 used the CW's name as a means of introduction.  During the

ensuing meeting, which took place in Spanish, UCA-2 gave TORRES

two photographs for the manufacture of one green card and one

social security card.  The name provided to TORRES, written on

the reverse of one photograph, was Eclidio F. Sousa, with a d/o/b

of July 18, 1979.  UCA-2 and TORRES agreed upon a price of

$120.00 for the cards and TORRES told UCA-2 to return the

following day.  TORRES gave UCA-2 a piece of paper with his

telephone number and the name "Luis" written on it, and also

indicated when asked that he would be willing to meet with UCA-2

again to arrange for the manufacture of fraudulent sets of

documents for (fictitious) employees of UCA-2.  UCA-2 left the

6

store shortly thereafter and drove away.

12.   On October 6, 2006, I and other ICE agents met with UCA-2 prior to the meeting with TORRES and provided UCA-2 with $120.00, and fitted UCA-2 with electronic recording equipment. At approximately 8:40 a.m., and at all times under surveillance by ICE agents, UCA-2 drove to a lot adjacent to Aries Record Shop and waited for TORRES to arrive.

13.   TORRES arrived about ten minutes later driving the same Chevrolet Lumina we had observed him driving the previous day, and parked and entered the store.  As UCA-2 exited his vehicle and walked towards the store, TORRES came out of the store to retrieve some items from his car.  UCA-2 and TORRES greeted one another and both went inside Aries Record Shop.  Once inside the store, TORRES placed a green card and social security card on the counter before placing them in a white envelope for UCA-2. TORRES explained to UCA-2 that the social security card, which was placed in laminate, was not sealed because it needed to be signed first.  UCA-2 then took possession of the envelope and gave TORRES $120.00, which UCA-2 counted for him.  TORRES took the money and recounted it.  Before exiting, UCA-2 told TORRES that UCA-2 needed three to four additional sets of documents the following week.  TORRES stated that he did not work on Tuesdays or Wednesdays and that UCA-2 should telephone him first. Following the completion of this transaction, which lasted

approximately five minutes, UCA-2 left Aries Record Shop and
returned to a previously agreed upon meeting spot.  Once there, I
took possession of the envelope; it contained a fraudulent green
card in the name of Eclidio F SOUSA, A056 772 250, date of birth
7/18/79, and a fraudulent social security card in name of Eclidio
F SOUSA, #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.  A subsequent check of ICE and SSA records
revealed that the green card and social security numbers were
both invalid.

The Second Controlled Purchase on October 12, 2006

    14.   On October 11, 2006, at approximately 11:40 a.m., I
listened as UCA-2 called TORRES at the number TORRES had
provided, and left a message indicating that UCA-2 was interested
in purchasing additional fraudulent sets of documents.  TORRES
called UCA-2 back about five minutes later.  Among other things,
UCA-2 told TORRES that UCA-2 needed five sets of documents and
TORRES stated that the price would, as before, be $120.00 per
set.  The two arranged to meet at Aries Record Shop the following
day, at 8:45 a.m.

    15.   On October 12, 2006, I and other agents met with UCA-2
prior to the meeting with TORRES.  During this meeting, I
provided UCA-2 with five green-card style photographs to be
presented to TORRES, and UCA-2 wrote a fictitious name and d/o/b
on the reverse of each photograph.  In addition, we fitted UCA-2
with electronic monitoring and recording equipment.  UCA-2 then

8

drove and parked near the store to wait for TORRES and I and other agents established surveillance in the area.

16. Our surveillance included a section of South Second Street in New Bedford. At approximately 8:35 a.m., we observed the gray Chevrolet Lumina that TORRES had been driving parked near to a dwelling at 500 South Second Street. At approximately 8:50 a.m., TORRES exited from a building located on South Second Street and entered the gray Lumina and drove away; we were unable to determine the exact address of the building TORRES came out of but it was near to the Gray Lumina, in the vicinity of 500 South Second Street, a grayish three-story apartment building. 500 South Second Street is just a few minutes away from Aries Record Shop at 971 Brock Avenue, and TORRES arrived there and entered the store at approximately 8:55 a.m.

17. UCA-2 entered the store shortly thereafter and met with TORRES. UCA-2 presented the photographs to TORRES and TORRES proceeded to copy on a blank white envelope the names and d/o/b's listed on the back side of each photograph. As TORRES did so, UCA-2 asked TORRES whether he could provide UCA-2 with completed sets of documents that same day. TORRES agreed to call UCA-2 by noon that day to indicate whether TORRES could do so but stated the transaction would take place elsewhere assuming he was able to do so. UCA-2 then left the store and drove away.

18. Shortly before 10:00 a.m., agents surveilling Aries

Record Shop observed TORRES enter the gray Lumina and drive away. Agents followed as TORRES drove and parked near a three-story tan colored building at 41 Winsor Street in New Bedford.  TORRES, carrying a plastic bag, entered the building at approximately 10:00 a.m.  TORRES came out of the building at approximately 10:50, but carrying a box instead of a plastic bag.  TORRES then drove to another location on Winsor Street, near the intersection of Winsor and County Streets.  TORRES entered County Street Liquors and emerged at approximately 10:55 a.m. carrying yet another box.  TORRES then stopped for a few minutes at the Central Food Market at 29 Division Street in New Bedford before returning to 500 South Second Street at approximately 11:05 a.m.

19.  At our direction, UCA-2 called TORRES at approximately 12:20 p.m. to see whether TORRES would be able to provide the five sets of documents that day.  The telephone call was monitored and recorded.  TORRES initially instructed UCA-2 to meet him at 2:00 p.m. that afternoon at 500 South Second Street, but agreed at UCA-2's request to move the meeting to 1:30 p.m. TORRES, who never stated during the conversation if the documents had been completed, told UCA-2 to telephone him again prior to arriving.

20.  Prior to the anticipated meeting, we met with UCA-2 and provided UCA-2 with $600.00 to complete the transaction, and fitted UCA-2 with electronic monitoring and recording equipment.

At my instruction, UCA-2 called TORRES at about 1:25 p.m. to say that UCA-2 was nearing 500 South Second Street.  TORRES told UCA-2 to proceed to #500, and stated that he was looking outside his window waiting for UCA-2 to arrive.  We then observed TORRES minutes later standing outside 500 South Second Street.  At approximately 1:29 p.m., UCA-2 greeted TORRES and they entered the building.  Once inside, the meeting took place on a staircase.  TORRES showed UCA-2 five sets of documents and UCA-2 placed them in an envelope TORRES provided.  UCA-2 then counted the money and paid TORRES, who also counted the money.  UCA-2 told TORRES that UCA-2 might need more documents from TORRES the following week, and would call him.  TORRES said that was good. UCA-2 noted that the staircase led to an apparent second floor apartment, which was open, but did not know if TORRES lived at that location.  The meeting ended, and UCA-2 exited the building at approximately 1:31 p.m., and drove to the previously agreed upon meeting spot.

21.  Once there, UCA-2 handed me the envelope containing five sets of completed documents.  The documents consisted of green cards and social security cards for the following named individuals:

a.    Nemerson F. Junior, d/o/b, DOB 12/17/82, green card number A056 880 025, and SSN 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;

b.    Edmilson T. Oliveira, d/o/b 08/25/78, green card number

A056 997 726, and SSN 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;

c.    Robson F. Vilar, d/o/b 02/28/71, green card number A056 778 893, and SSN 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;

d.    Vanderley A. Oliveira, d/o/b 09/16/76, green card number A056 770 837, and SSN 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; and

e.    Fernanda C. Santos, d/o/b 10/19/81, green card number A056 003 680, and SSN 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.

All of the green cards obtained from TORRES contained the photographs UCA-2 had delivered to TORRES earlier that day.  A subsequent check of the ICE records revealed that three of the green card numbers received from TORRES were valid, but belonged to persons other than named on the cards, while two green card numbers received from TORRES were invalid.  A check with the SSA revealed that three of the social security numbers were invalid, while two numbers were valid but were assigned to persons other than those named on the cards.

22.    In sum, I have received a total of six sets of documents as a result of the two transactions summarized above. I have reviewed all the documents and have determined that they are counterfeit identification documents.  A review of ICE and Social Security Administration documents reveals that the green card and social security numbers that TORRES used are either invalid, or belong to an individual other than the person listed on the documents.

## Conclusion

23.   Based on the foregoing, I believe probable cause exists
to conclude that Luis TORRES, on October 6 and 12, 2006, did
knowingly and without lawful authority, transfer false
identification documents, in violation of Title 18 U.S.C. Section
1028(a)(2).


I certify that the foregoing is true and correct.  Executed
at Boston, Massachusetts, this 2nd day of March, 2007.

THOMAS L. OHLSON
Special Agent
U.S. Department of Homeland Security,
Immigration and Customs Enforcement



Subscribed and sworn before me this 2nd day of March, 2007,
in Boston, Massachusetts.

LEO T. SOROKIN
United States Magistrate Judge

13

**Criminal Case Cover Sheet**            **U.S. District Court - District of Massachusetts**

**Place of Offense:**   New Bedford     **Category No.** II      **Investigating Agency** ICE

**City**   New Bedford         **Related Case Information:**

**County**    Bristol

Superseding Ind./ Inf. _____    Case No. _____
Same Defendant _____   New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name   LUIS TORRES             Juvenile   ☐ Yes   ☒ No

Alias Name _____

Address    500 South Second Street, New Bedford, Massachusetts

Birth date (Year only):   1961   SSN (last 4 #): _____ Sex  M  Race:    HISPANIC    Nationality:   MEXICAN

**Defense Counsel if known:** _____     **Address:** _____

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA**   Donald L. Cabell          **Bar Number if applicable** _____

**Interpreter:**    ☒ Yes ☐ No       **List language and/or dialect:**     Spanish

**Victims:**    ☐ Yes ☒ No     **If Yes, are there multiple crime victims under 18 U.S.C. §3771(d)(2)**   ☐ Yes ☐ No

**Matter to be SEALED:**    ☒ Yes    ☐ No

    ☒ **Warrant Requested**       ☐ **Regular Process**       ☐ **In Custody**

**Location Status:**

**Arrest Date:** _____

☐ **Already in Federal Custody as** _____ **in** _____ .
☐ **Already in State Custody** _____   ☐ **Serving Sentence**   ☐ **Awaiting Trial**
☐ **On Pretrial Release:**    **Ordered by** _____ **on** _____

**Charging Document:**    ☒ **Complaint**       ☐ **Information**       ☐ **Indictment**

**Total # of Counts:**    ☐ **Petty** _____    ☐ **Misdemeanor** _____    ☒ **Felony**   1

*Continue on Page 2 for Entry of U.S.C. Citations*

☐    I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
accurately set forth above.

Date:   **March 2, 2007**       **Signature of AUSA:** _(signature)_

District Court Case Number  (To be filled in by deputy clerk): _____

Name of Defendant     LUIS TORRES _____

**U.S.C. Citations**

| | <u>Index Key/Code</u> | <u>Description of Offense Charged</u> | <u>Count Numbers</u> |
|---|---|---|---|
| Set 1 | <u>18 U.S.C. §1028(a)(2)</u> | <u>Transfer of Fraudulent I.D. Documents</u> | <u>1</u> |
| Set 2 | | | |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:**

**ICE**